[Civ. No. 19564.   Second Dist., Div. Two.   Oct. 19, 1953.]

MARTHA OUTLAW HUNTINGTON, Appellant, v. HENRY EDWARDS HUNTINGTON II, Respondent.

Hightower & Martin and John L. Martin for Appellant.

Newell & Chester and Robert M. Newell for Respondent.

MOORE, P. J.—The questions here posed are (1) whether the court may require a husband to reimburse his wife or her lawyer for costs they have already incurred and expended in the prosecution of a divorce action; (2) whether, when an award against the defendant for costs for prosecuting a divorce case included sums which the plaintiff had already expended, the latter, in good conscience owes such sums to the defendant; and (3) whether the court had jurisdiction to allow the filing of a belated cost bill.

This is a companion case to one of the same title numbered 19562, *ante*, p. 705 [262 P.2d 104], whereby the parties were divorced.

In December, 1951, leaving plaintiff in Los Angeles, defendant migrated to the State of Nevada. His purpose was to establish residence and citizenship in the sister state whereby to avoid service of legal process of California courts. On the 18th of that month, plaintiff sued him for divorce in the court below and had an order to show cause issued against her husband to enforce payment of alimony, court costs and attorneys' fees, pendente lite. Defendant made a special ap-

pearance solely for the purpose of attacking the jurisdiction of the court. At a hearing of the order to show cause on January 24, 1952, a minute order was entered, followed by a formal, written order dated January 29, 1952, which in part provides that the court had jurisdiction of the subject matter and of the person and property of the action, defendant having been duly served, and further directed payment by defendant of alimony to plaintiff and ordered him "to pay counsel for the plaintiff the sum of Six Thousand Dollars ($6,-000.00) *on account* in connection with legal services heretofore rendered and now contemplated to be rendered by said attorneys, and the sum of Fifteen Hundred Dollars ($1,500.00) for court costs, the employment of Nevada counsel, investigators, and the like, and in connection with all costs incurred to date . . ." Defendant seasonably applied for a modification of the formal document and on March 31, 1952, it was amended so that the "monthly payments due from defendant to plaintiff's attorneys on account of attorneys' fees and costs heretofore ordered are reduced from $500.00 per month to $350.00 a month."

The cause was tried August 8, 1952. Findings favorable to plaintiff were filed, and the decree, adjudging defendant's Nevada divorce to be a sham, dissolved the marriage "when one year shall have expired." Defendant's appeal therefrom (Civ. No. 19562) was duly lodged in this court. But the more vexing problem was not involved in that appeal. It appears that plaintiff's attorney testified that costs had been paid prior to the trial in the sum of $1,450.96 and that $1,200 thereof had been advanced by his firm to pay investigators and lawyers in Nevada. Thereupon, at the request of defendant's counsel, schedules were prepared by a competent accountant to aid the court. Plaintiff's counsel stated that after June 15, 1952, by reason of the accounting and other services required, there would be about $500 additional expenses which would be proved by an affidavit to be filed prior to the entry of the interlocutory decree. Such affidavit was made by Miss Gier, the bookkeeper in the office of plaintiff's counsel. It showed that after June 15, 1952, such counsel had advanced $568.96 in the prosecution of the action. But, although served previously, the affidavit was not filed until the day the judgment was filed. The trial judge evidently acted upon it by declaring in the judgment the amount of money disbursed by plaintiff's counsel on her behalf. The findings declare:

"The reasonable and necessary costs of action and money necessarily expended for the prosecution of this action incurred by Martha [the wife] during the pendency of this action to June 15, 1952, was the sum of $1,450.96, and to the date this interlocutory decree is entered, Martha has spent in connection with such costs and expenses the additional sum of $568.96. Said monies have been advanced by counsel for Martha."

This was followed in the conclusions by the following:

"The reasonable and necessary costs and expenses incurred by Martha in connection with this proceeding to June 15, 1952, is the sum of $1,450.96 and since that date and to the date of the signing of these Conclusions, Martha has expended or incurred an additional $568.96 in costs and expenses reasonably incidental and necessary to the prosecution of this proceeding, and in protection of the interests of Martha and the minor children."

The judgment provided:

"The $9,000.00 of attorney's fees hereby awarded and the said court costs and expenses incident to this proceeding, being in the total amount of $2,019.92, shall be paid by the defendant to said counsel at the rate of Three Hundred Dollars ($300.00) per month on the first day of each month hereafter, commencing August 1, 1952, until paid in full." While the decree was signed and filed August 8, and was entered August 11, 1952, no formal cost bill made appearance in the clerk's office nor was one ever served.

Defendant duly moved "to retax plaintiff's costs and disbursements" adjudged "in the amount of $2,019.92 on the ground that no memorandum of costs and disbursements was filed by plaintiff and that the time for filing same has elapsed." Also, he moved to strike from the decree the following: "and the said court costs and expenses incident to this proceeding being in the total amount of $2,019.92." The court denied the motion to retax costs, but granted the motion to strike. A motion to strike the Gier affidavit was denied. ■ While there is no provision in law for such *ex parte* proof after a cause has been submitted (Code Civ. Proc., § 2009), the ruling is harmless, inasmuch as that portion of the judgment included by reason of the contents of the affidavit was stricken.

The foregoing recital establishes beyond question that (1) at the hearing of the first order to show cause defendant made a special appearance; (2) there was no stipulation that additional court costs might be determined at the time of trial;

(3) the court did not expressly reserve jurisdiction to award a later allowance of costs; (4) no motion was ever filed, or request made prior to or at the trial for an order requiring defendant to pay additional court costs; (5) plaintiff submitted her cause without even introducing any evidence of additional expenditures.

After the court had granted defendant's motion to strike the provision for defendant to pay the sum of $2,019.92, plaintiff moved under section 473 (Code Civ. Proc.) to be allowed to file a cost bill due to inadvertence. Affidavits in support of the motion and against it were submitted and the motion denied.

Both rulings were correct. ■ Even though the court might have had jurisdiction of defendant's person, an award for costs incurred *in the past* is outside the court's jurisdiction. (*Loveren* v. *Loveren,* 100 Cal. 493, 494 [35 P. 87] ; see *McClure* v. *Donovan,* 86 Cal.App.2d 747, 748 [195 P.2d 911], wherein one of respondent's counsel was an attorney for the appellant.)

■ When the court awarded plaintiff $1,500 for court costs "to date" defendant had not yet appeared and of course no stipulation had been made for a later determination of costs. In such a situation there was no course open to plaintiff if she desired a new order except to apply within the lawful period to the court. But she did not do so. On the contrary, she took no action until one month had elapsed after her attorneys had been given notice of entry of judgment when she came up with her notice of motion to be relieved "from an order taken against her through mistake, inadvertence, surprise or excusable neglect." She wished to file a formal cost bill in the divorce action; she had relied upon the fact that the trial judge "also believed there was no need for a formal cost bill in a divorce proceeding, and she had merely incorporated the *monies expended* by the plaintiff to maintain the action and protect the interests of herself and her children as a part of the judgment . . ." From the language of the motion it is clear that an order allowing the proposed cost bill would have added nothing except sums that had *already been expended* by her and her attorneys.

■ There is still another reason why the court could not validly allow judgment for the "additional sum of $568.96" besides the $1,450.96 which plaintiff's attorney testified had been paid out prior to June 15, 1952. Plaintiff's counsel testified at the trial that of the $1,450.96, $645.63 had been expended prior to the hearing at which the order was made for

future costs and counsel fees. If she had expended $645.63 prior to the allowance for costs, then she had no right to be reimbursed in that sum. (*Loveren* v. *Loveren, supra.*) In good conscience she owed it to defendant. Now, inasmuch as she held $645.63, she could have paid herself the "additional $568.96" expended *after* June 15, 1952. By reason of the fact that the total of plaintiff's disbursements in the prosecution of her action *after the original order* was only $1,374.29 it would be unlawful to require defendant to pay her the further sum of $568.96 as costs, to say nothing of the $125.71* which she holds in trust for defendant.

The foregoing computation is predicated upon the assumption that the $2,019.92 mentioned in the interlocutory decree includes the $1,500 ordered on January 29, 1952, to be paid by defendant. But if the motion to modify had been denied, then on the face of the minute order and the judgment, plaintiff would have recovered $3,519.92—good reason alone for the modification.

Plaintiff contends that because the initial order required defendant to pay her counsel "$6,000 *on account* in connection with legal services" rendered and to be rendered, the court thereby reserved jurisdiction to order further payments of costs without first having an application therefor and without a hearing or proof of the expenditures. The answer to such contention is complete. The phrase "on account" follows the figures $6,000 and is restricted to them. The words "and the sum of $1500 for court costs, the employment of Nevada counsel, investigators, and the like . . . to date" is impliedly preceded by the verb "to pay." By virtue of a fair construction of the sentence, the phrase "on account" applies only to the $6,000 and not to the "$1500 for court costs."

In support of her contention that by use of the phrase "on account" the court retained jurisdiction to award payment for "past expenses," plaintiff cites *Hellman* v. *Hellman*, 108 Cal.App.2d 588 [239 P.2d 458], wherein the husband was, at the hearing of the order to show cause, directed to pay his wife's attorney "forthwith the sum of $200 'on account of counsel fees.'" Granting the efficacy of the phrase, "on account," as claimed by plaintiff, the cited authority might be pertinent here if the phrase had followed "$1500." But

---

*Derived by subtracting the $1,374.29 from $1,500 advance payment on account of costs.

it did not. On the contrary, the $1,500 was "for court costs." The modified order of March 28, 1952, was not made as an order to make payment, but was merely for the purpose of changing the terms of payment of the $7,500. Moreover, Mr. Hellman made a general appearance in the action.

■ The affidavit of plaintiff's counsel in support of the application to file a belated cost bill under section 473 did not state legal grounds for such an order. Plaintiff's attorneys knew at all times the necessity of applying to the court for an order for payment of prospective costs. They pursued that course in obtaining the award of January 29, 1952. No request was made by plaintiff for the court to reserve jurisdiction to determine at a later time whether plaintiff's additional costs should be paid by defendant. While plaintiff's counsel testified over objection that he had expended $1,450.96 in the prosecution of the action, he merely promised to "present evidence of additional expenditures by his client later in the trial." But he did not do so. Had he made offer of such evidence, defendant would have been entitled to introduce evidence in reply thereto and might thereby have frustrated plaintiff's attempt. On the contrary, for the purpose of establishing her right to the "additional costs" expended, plaintiff filed with the court an ex parte affidavit of Miss Gier showing the disbursement of $568.96 after June 15, 1952. Such affidavit was not equivalent to testimony. In any event, it did not confer jurisdiction to allow the filing of the belated cost bill.

Orders affirmed.

McComb, J., and Fox, J., concurred.