[Civ. No. 8749. First Appellate District, Division One.—February 2, 1933.]

KARL E. BLANK, Respondent, v. FLORIENE BLANK, Appellant.

Bodkin & Lucas and G. Stuart Silliman for Appellant.

Don Marlin for Respondent.

KNIGHT, J.—The defendant appeals from an order denying her motion for alimony *pendente lite,* counsel fees and costs in an action for divorce.

The parties had been married approximately eight years, and there were two children aged, respectively, six years and eighteen months. The action was instituted in Los Angeles County in September, 1930, a few days after defendant and the children had departed for Emporia, Kansas, to visit defendant's mother. The complaint was based on charges of cruelty. Besides answering, defendant filed a cross-complaint charging cruelty, and she filed therewith her motion for alimony, counsel fees and costs. She was not present at the hearing and determination of her motion, having remained in Kansas at her mother's home, and the evidence submitted in her behalf consisted of the verified pleadings and two affidavits, one being presented in the form of a questionnaire, the form used evidently being supplied under court order for such purpose. Plaintiff sought to have the questionnaire excluded on the technical ground that it was not authenticated in the manner required by law. The objections were properly overruled and the hearing narrowed down to the issue of the financial resources of the respective parties and their ability to provide for themselves.

Defendant averred in her affidavits that plaintiff was thirty-six years old, in good health, and had been a real estate salesman for about four years; that his present monthly income from all sources was $175; that during the

past year he had earned $500 in commissions, besides having received $2,400 in donations from his father, and $350 from her mother; and that his present financial worth was $1,000. She further averred that at one time she was employed as clerk in a retail store, receiving therefor $130; that her net financial worth amounted to nothing and that she had no independent income; that she was then living with her mother, in the latter's home, and that she was without funds to make a defense to the action, or to support herself or children, or to defray her expenses to California to appear at the trial of the action or at any hearing to be had therein. She also averred that when she left California she did so with the expectation of returning as soon as plaintiff was able to secure employment and provide for her and the children; that he induced her to go, and said nothing whatever about bringing divorce proceedings; and that he brought the action six days after her departure.

All of the essential facts stated in defendant's affidavits were denied by plaintiff in the oral testimony given by him at said hearing in his own behalf. According to his testimony he had been employed by his father selling bonds, and for the past year had earned only $500; that his father, who was well advanced in years, had provided plaintiff and his family with a home, had helped support the family and given him small amounts of money from time to time as his necessities required; that the total amount of these donations was possibly $400. He denied having received any money from defendant's mother. He further testified that when his wife left she intended to remain away permanently; that the matter of divorce was discussed and that her mother, who was visiting them at the time, insisted that defendant settle the matter before she left, but that defendant refused to do so; also that defendant told him before she left that she did not intend to return; that her brother in New York had offered her a position at $300 a month which she intended to accept and live in New York at her brother's home, leaving the children with her mother. He also stated that defendant's family was the owner of two large flour-mills in Kansas valued at approximately $250,000; and that defendant told him she owned a one-fifth interest therein. Continuing, he stated that the money

defendant used to defray her expenses to Kansas was sent to her in the form of a check by said milling company. And he denied generally that he had any money or property of his own, stating that he had paid his attorney only $25.

Section 137 of the Civil Code provides in part that when an action for divorce is pending, the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself and the children, or to prosecute or defend the action; and it provides also that a like order may be made against the wife. In the present case, as will be noted, there is a sharp conflict in the evidence as to the financial worth of the respective parties and their ability to support themselves and the children. Evidently the trial court accepted as true the testimony given by plaintiff, which in our opinion is legally sufficient to prevent our holding that there was an abuse of discretion on the part of the trial court in making the adverse order. True, several of the cases cited by defendant involved circumstances somewhat similar to those presented here, and the trial court therein, in the exercise of its discretion, granted the order directing the husband to pay, and such order was sustained on appeal. And it may be conceded in the present case that if the trial court had seen fit to grant defendant's motion, the evidence adduced in her behalf would have been legally sufficient to sustain such order on appeal. But it did not choose to take such action; and since under settled rules the trial court is the sole judge of the weight of the testimony and the credibility of the witnesses, we have no authority on appeal to substitute our judgment, even though we may believe that the evidence upon which the trial court based its order warranted a different conclusion. It is also true that in situations of this kind the trial court may follow the course suggested in *Farrar* v. *Farrar,* 45 Cal. App. 584 [188 Pac. 289, 290], that is, grant the motion despite the fact that the husband was then destitute both of funds and ability to pay, and thereafter suspend his suit for divorce until he could do justice to his wife. In this regard the court in that case quoted the following from Bishop on Marriage, Divorce and Separation (2d ed., sec. 981) : "If he cannot aliment her, and give her the means of defense, he cannot have his divorce." But there was no duty imposed

on the trial court in the present case to follow such course, and having found as it did, upon sufficient evidence, that under present conditions plaintiff would be unable to comply with an order for the payment of alimony if such order were made, that he was out of employment and could not get work, and that defendant was provided with sufficient funds and resources of her own to support herself and the children pending the trial of the action, and to advance the cost of her defense, it acted within its legal power in denying the motion, and we find no legal ground upon which it may be held that the rendition of the adverse order constituted an abuse of discretion. As aptly said by the Supreme Court in *Wilder* v. *Wilder*, 214 Cal. 783 [7 Pac. (2d) 1132, 1133], in dealing with a similar case: " . . . it cannot be said that the lower court abused its discretion in refusing the allowance, inasmuch as the circumstances of both parties as to age and financial resources were before the court, and the whole matter rested in the sound discretion of the trial court. (*Stewart* v. *Stewart*, 156 Cal. 651, 655 [105 Pac. 955]; 1 Cal. Jur. 992.) A reviewing court is not authorized to revise the lower court's judgment even if it should be of the view that it would have dealt more liberally with the appellant had the matter been submitted to its judgment in the first instance. A clear abuse of discretion only will justify its interference with the judgment of the trial court."

The order is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 3, 1933.